Brian M. Rothschild, USB #15316
Andrew V. Hardenbrook, USB # 15371
**PARSONS BEHLE & LATIMER**
201 S Main St #1800,
Salt Lake City, UT 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
BRothschild@parsonsbehle.com
AHardenbrook@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Hillcrest Bank, a division of NBH Bank*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| In re:<br><br>FINLINSON LAND AND LIVESTOCK, LLC<br><br>Debtor. | Case No. 26-bk-22119-MFT<br><br>Chapter 12<br><br>Judge Michael F. Thomson |

**HILLCREST BANK'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

Hillcrest Bank, a division of NBH Bank (the "**Bank**"), by and through its undersigned counsel, hereby respectfully requests that the Court grant the Bank relief from the automatic stay to permit the Bank to exercise its state court rights in and to the Bank's Collateral (defined below) and to proceed with its rights and remedies in connection with the State Court Action (defined below). In support of this Motion, the Bank states as follows.

## I. INTRODUCTION

This case commenced approximately six months ago on April 15, 2026, on the eve of an evidentiary hearing on the Bank's motion to appoint a receiver over its Collateral in connection with the State Court Action. Since that time, the State Court Action has been stayed, and the Bank

has patiently provided the Debtor with time to attempt to reorganize its business affairs. That patience has been repaid with loss, obfuscation and lack of disclosure regarding the Debtors' assets, and no meaningful progress toward a confirmable plan. The Debtor has sustained more than $250,000 in negative cash flow since June 2026, the shortfall deepening to $116,585 in August alone. The Debtor is operating without authorization or the Bank's consent to use cash collateral, though it is unclear whether the Debtor is spending cash. And the Debtor has kept the Bank's appraiser away from the cattle, so that neither the Bank nor this Court knows how many cattle remain or in what condition. As a result, each month that passes endangers the living Collateral to the Bank's prejudice.

The law does not require the Bank to continue to wait. The Debtor offers no adequate protection, and it cannot confirm a plan without the Bank's consent, which the Bank will not give on the terms proposed. Relief is therefore warranted for cause under 11 U.S.C. § 362(d)(1) and under § 362(d)(2) including for lack of adequate protection and inability to confirm a plan. Because the Collateral includes live animals whose welfare must be protected, the loss of which would cause immediate and irreparable harm, the Bank also asks the Court to waive the 14-day stay under Fed. R. Bankr. P. 4001(a)(4).

## II. JURISDICTION

1. The Court has jurisdiction under 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (G).

2. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are 11 U.S.C. §§ 105(a) and 362(d); Federal Rule of Bankruptcy Procedure 4001(a); and Local Rule 4001-1.

## III. RELEVANT FACTUAL BACKGROUND

### A. The Bank Has a Claim Secured by Debtor's Assets.

4. Rock Canyon Bank made five loans to the Debtor (collectively, the "**Loan Agreements**"), evidenced by the notes, loan agreements, security agreements, UCC financing statements, deeds of trust, and guaranties attached as Exhibits A–J and secured by first-priority liens on substantially all of the Debtor's assets (the "**Collateral**").

5. The Debtor defaulted beginning January 15, 2025, failed to cure after the Bank's March 26, 2025 Notice of Default and Demand for Payment (Ex. K), and the Bank accelerated.

6. Hillcrest Bank, a division of NBH Bank, is a successor in interest to Rock Canyon Bank. *See* Articles of Merger of Rock Canyon Bank with and into NBH Bank, attached hereto as Exhibit L.

7. On July 16, 2026, the Bank filed a secured proof of claim for $7,504,885.07, which itemizes the loans and balances. (Claim No. 5-1.)[1]

### B. The Bank Commenced a Prepetition Receivership and Foreclosure Action against the Debtor

8. Before the Petition Date, on November 7, 2025, the Bank commenced and later amended a civil action against the Debtor and the other obligors in the Fourth Judicial District Court, Millard County, State of Utah, captioned *Hillcrest Bank v. Finlinson Land and Livestock, LLC, et al.*, Case No. 250700026 (the "**State Court Action**").

9. In the State Court Action, the Bank asserts claims for breach of the Loan Agreements and the related guaranties and sought (a) a money judgment against the Debtor, co-debtor Sinks Land, LLC (also a debtor in chapter 12), and the Guarantors, (b) judicial foreclosure

---

[1] The Bank's proof of claim constitutes prima facie evidence of the claim's validity and amount. Fed. R. Bankr. P. 3001(f).

of its first-priority security interests in the Collateral of both borrowers, and (c) the appointment of a receiver to take possession of, manage, and preserve the Collateral of both borrowers—including the Debtor's cattle operation and agricultural real property — to prevent its waste and dissipation pending resolution.

10. On April 15, 2026 ("**Petition Date**"), in the hour before an evidentiary hearing on the Bank's receivership application in the State Court Action was scheduled to begin, the Debtor commenced this Chapter 12 proceeding, thereby staying the State Court Action before the State Court could adjudicate the Bank's receivership and foreclosure claims.

**C. <u>Debtor's Financial Disclosures Show a Negative Cash Flow Balance.</u>**

11. On April 17, 2026, the Court ordered Debtor to file monthly operating reports "no later than the 21st day of the month following the expiration of the month, which is the subject of the statement or report, in accordance with Local Rule 2082-1(a)." (Dkt. No. 3.)

12. On June 22, 2026, Debtor filed a Monthly Operating Report for the month of May 2026 ("**May MOR**," Dkt. No. 32). In the May MOR, Debtor reported no cash receipts, cash disbursements of $256.05, and negative cash flow of $256.05. (*Id.* at 2.) Debtor anticipated cash receipts of $282,229 for the month of June 2026, with $258,564 in disbursements, and a net cash flow of $23,665. (*Id.* at 3.)

13. On July 1, 2026, Debtor filed an Interim Cash Collateral Report, which showed Debtor's actual income for June 2026 was $82,983.48 with cash expenditures of $150,338.15, leaving a negative cash flow of $67,354.67. (Dkt. No. 37.)

14. On August 31, 2026, the Debtor filed its second Monthly Operating Report for the month of July ("**July MOR**," Dkt. No. 47). In the July MOR, Debtor reported cash receipts of $120,558.61, cash disbursements of $104,750.88, and net positive cash flow of $15,807.73. (*Id.* at 2.) However, the budgeted vs. actual cash collateral budget attached to the July MOR reflects that

the Debtor, in fact, had expenses totaling $191,032.46 in July. (*Id.* at 9.) This resulted in a ***negative*** cash flow of $70,473.85 for July. Regardless, the only source of income for the Debtor is the sale of the Bank's livestock Collateral, meaning that each sale diminishes the Bank's Collateral base.

15. **Debtor has failed to file any other monthly operating reports or other financial disclosures with the Court.** The Debtor did provide the Bank with the budgeted vs. actual cash collateral for August 2026, a true-and-correct copy of which is attached as **Exhibit M** hereto.

16. According to Exhibit M, the Debtor had total income of $44,545.23 in August and total expenses of $161,130.67, resulting in a ***negative*** cash flow of $116,585.44 for August.

17. On October 9, 2026, counsel for the Bank requested numbers for September 2026 from counsel for the Debtor. To date, no response to that request has been received.

**D. Debtor's Proposed Plan of Reorganization Is Unconfirmable.**

18. On July 14, 2026, Debtor filed its Plan. (Dkt. No. 43.)

19. Under the proposed Plan, Debtor would retain all real and personal property and continue to operate its farming and livestock business. (Dkt. No. 43 §§ 1.02, 5.05.)

20. The Plan proposes to treat the Bank in Class 3. (Dkt. No. 43 § 4.04). Under Class 3, the Bank would have an Allowed Secured Claim (as defined in the Plan) in the amount of $6,400,000 to be paid over 20 years at a fixed interest rate of 5.25% per annum. (Dkt. No. 43 § 4.04 & Ex. A (Secured Creditor Amortization and Payment Schedules).) Payments would be made twice per year in the amount of $260,350. (*Id.*)

21. Debtor's feasibility analysis anticipates Debtor having an annual surplus of between $173,180 and $233,180 per year as a reserve for potential droughts. (Dkt. No. 43, Ex. D.)

22. The Bank filed an objection to the Debtor's Plan, arguing that (a) the proposed interest rate fails to satisfy the requirements of 11 U.S.C. § 1225(a)(5)(B)(ii), (b) the Plan does not properly value the Bank's secured claim, (c) the proposed 20-year plan is not commercially

reasonable, (d) the Plan is not feasible, and (e) the Plan is not in the best interests of the creditors. (Dkt. No. 46.)

23. At the hearing on the Plan on August 31, 2026 ("**Plan Hearing**"), the Debtor represented that the Plan would require the consent of the Bank and acknowledged that feasibility without consent looked somewhat doubtful. (Dkt. No. 48.)

### E. The Debtor Has Repeatedly Hindered the Bank's Ability to Appraise its Collateral

24. In July 2026, the Bank retained Tom Boyer to appraise the Bank's Collateral, including the cattle.

25. The Debtor has repeatedly attempted to delay and hinder Mr. Boyer's ability to count and appraise the Bank's Collateral.

26. First, Mr. Boyer made repeated attempts to contact a Debtor representative, but these efforts were ignored or rebuffed.

27. Next, the Debtor denied Mr. Boyer access to the cattle, arguing that they were out on rangeland.

28. These emails resulted in a call in August 2026 to discuss the issue of access to the cattle, during which the Debtor agreed the cattle could be counted no later than the end of October and agreed to provide the Bank with a timeline and cost estimate.

29. This was confirmed at the Plan Hearing, during which counsel for the Debtor stated that the Debtor would work with the Bank to count and appraise the cattle in the next six to eight weeks. (Dkt. No. 48.)

30. To date and despite multiple requests, the Debtor has not provided the Bank with a timeline or cost estimate, and it seems unlikely the Debtor will comply with its commitment to gather the cattle by the end of October.

### F. The Debtor Has No Ongoing Ability to Use Cash Collateral

31. The Court's order granted the Debtor's request for interim use of cash collateral (the "**Interim Cash Collateral Order**") (Dkt. No. 38), which included a budget for the use of cash collateral through August 2026 and required monthly adequate protection payments of $30,000 to the Bank for the Debtor's use of its cash collateral.

32. At the Plan Hearing, the Court addressed the Debtor's use of cash collateral. Counsel for the Debtor acknowledged that its authority to use cash collateral ended on August 31, 2026, and that no final order authorizing use of cash collateral had been entered.

33. Counsel for the Debtor stated that the Debtor would seek additional authority for use of cash collateral and file a final version of the cash collateral order.

34. To date, the Debtor has not filed a motion requesting continued authority to use cash collateral, and no final order has been entered by this Court.

35. The Debtor has not filed on the docket nor provided the Bank with a budget proposal for the use of cash collateral beyond August 31, 2026. The Bank has not consented to any ongoing use of the cash collateral.

## IV. ARGUMENT

The Court "shall grant relief from the stay" either (1) for cause, *including* lack of adequate protection, or (2) with respect to a stay of an act against property, if "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(1)-(2); *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375–76 (1988). The Bank has the burden of proof on establishing lack of equity, and the Debtor has the burden of proof on all other issues. 11 U.S.C. § 362(g). Here, relief from the automatic stay is justified under both 362(d)(1) and (2).

### A. Cause Exists Under § 362(d)(1) to Terminate the Automatic Stay

Section 362(d)(1) of the Bankruptcy Code states that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from stay provided under subsection (a) . . . such as by terminating, annulling, modifying or conditioning such stay . . . for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). Here, cause exists because the Bank lacks adequate protection and because the *Curtis* factors favor allowing the Bank to proceed with the State Court Action.

#### 1. The Bank Lacks Adequate Protection

The question of adequate protection is decided on a case-by-case basis. *See Busch v. Busch (In re Busch)*, 294 B.R. 137, 140 (B.A.P. 10th Cir. 2003). With respect to lack of adequate protection, the United States Supreme Court has stated that a secured creditor's interest in property "is not adequately protected if the security is depreciating during the term of the stay." *Timbers of Inwood Forest Assocs.,* 484 U.S. at 370.

Here, according to the Debtor's own filings, the Bank lacks any equity cushion. The Bank's proof of claim totals $7,504,885.07. The amount is hardly disputable because it is based on promissory notes with principal and calculated interest. The Debtor's Schedules value its real and personal property at $6,303,132.04 (Dkt. No. 16 at 2), and the Debtor's Plan values the collateral securing the Bank's Class 3 claim at only $6,400,000, (Dkt. No. 43).[2] Thus, the Bank's claim exceeds the collateral by more than $1.1 million according to the Debtor's own sworn statements regarding value. If the Debtor's representations are accurate, the Bank is an

[2] While the Bank contests the Debtor's values, the Debtor has repeatedly obstructed the Bank's appraisal efforts by denying access to the cattle, leaving the Bank unable to appraise its Collateral.

undersecured creditor without an equity cushion. *See Timbers of Inwood Forest Assocs.*, 484 U.S. at 373.

Given this lack of equity, the Debtor cannot change its representations for convenience and argue the Bank is somehow adequately protected by an equity cushion during the pendency of this proceeding. The Bank's Collateral consists primarily of real estate, livestock, crops, inventory, equipment, and the proceeds thereof, which are consumable and depreciating. While the Debtor was providing $30,000 per month in adequate protection payments, those payments have stopped. But even those payments were insufficient to protect the Bank as a result of the Debtor's continued ***negative*** cash flow every month since it began using cash collateral as follows: (1) negative $67,354.67 in June 2026, (2) negative $70,473.85 in July 2026, and (3) worsening to a negative $116,585.44 in August 2026. Debtor therefore has demonstrated an inability to generate sufficient income necessary to preserve, insure, and maintain the Collateral. Given the continued loss, the Bank's Collateral and protection (and equity cushion if there was one) are depreciating during the pendency of this proceeding, justifying immediate stay relief.

Further, the Debtor's authority to use cash collateral ended on August 31, 2026, with no final order entered. (Dkt. No. 38.) The Debtor has not filed a motion for continued use, offered a budget for the ongoing use of cash collateral, or obtained consent from the Bank. Because of the Debtor's failure to timely file MORs or provide an inspection or facilitate an appraisal of the cattle, the Bank does not even know if more cattle are being sold, to whom, at what price, and, if so, whether the proceeds are being used by the Debtor.

**Either possibility is troubling: it costs money to purchase feed, pay taxes and utilities, pay for veterinary care, and labor to care for such a vast cattle operation. Either the Debtor is using cash collateral of the Bank without authorization to meet these needs, or it is not**

**using cash collateral and the livestock are potentially not being cared for as winter approaches.**

To the extent the Debtor is continuing to use the Bank's cash collateral, it is doing so without authority, in violation of the Bankruptcy Code, and without any required offsetting protection. 11 U.S.C. § 363(c)(2) (prohibiting use of cash collateral absent consent or court authority); 11 U.S.C. § 363(e) (prohibiting or conditioning use as is necessary to provide adequate protection). This combined with the lack of adequate protection discussed above establishes cause for immediate relief from the automatic stay. *See In re Van Chase, LLC,* No. 10-31555-SBB, 2011 WL 6779557, at *6 (Bankr. D. Colo. Dec. 16, 2011) (determining that debtor's continued unauthorized use of cash collateral along with other unexcused failures constituted cause for relief from the automatic stay under section 362(d)(1)).

2. **The *Curtis* Factors Favor Terminating the Stay with Respect to the State Court Action.**

Whether "cause" exists to terminate the stay with respect to prepetition litigation is based on the circumstances of the case and guided by factors set forth in *In re Curtis*, 40 B.R. 795, 799–800 (Bankr. D. Utah 1984). *See In re Busch*, 294 B.R. at 140–41. The *Curtis* factors are a list of twelve nonexclusive factors including the impact of the stay on the parties and "balance of hurt," the interest of judicial economy, and how far the nonbankruptcy proceeding has progressed. *In re Curtis*, 40 B.R. at 799-800; *In re VidAngel, Inc.*, 593 B.R. 340, 346-54 (Bankr. D. Utah 2018) (applying *Curtis* factors and granting relief to let prepetition, non-bankruptcy-law litigation proceed in its original forum).

Applying the relevant factors in this case, the Court should grant relief from the stay. Before the Petition Date, the State Court Action sought, among other things, the appointment of a receiver to take possession of and preserve the cattle operation and agricultural real property. Such

an appointment would benefit the Bank, the Debtor, and the bankruptcy estate by stopping the ongoing deterioration of the assets of this bankruptcy estate. Thus, the balance of harms favors terminating the automatic stay.

Allowing the State Court Action to resume also serves judicial economy because the State Court Action is discrete and can be resolved more expeditiously in the State Court than before this Court. The State Court Action rests entirely on Utah law, and it reaches the Debtor and the non-debtor guarantors, whose guaranty obligations this Court will not adjudicate. Returning the parties to the Utah court, where the Bank's claims against every obligor and its remedies against the Collateral can be resolved together, avoids the duplicative and piecemeal litigation that would follow if the Bank's rights against its Collateral were severed from its claims against the Guarantors.

Finally, the State Court Action was filed and amended months before the Petition Date. The Debtor commenced this bankruptcy proceeding on the eve of an evidentiary hearing in connection with the Bank's receivership application. Thus, the State Court Action has progressed sufficiently to justify granting relief from the automatic stay to allow its continuance.

### B. Stay Relief Is Further Justified under § 362(d)(2) Because the Debtor Has No Equity and the Collateral Is Not Necessary to an Effective Reorganization.

Under 11 U.S.C. § 362(d)(2), the Court should grant relief from the automatic stay if the debtor does not have any equity in the property, and it is not necessary to an effective reorganization. The Debtor has the burden of demonstrating that the Collateral is necessary to an effective reorganization. 11 U.S.C. § 362(g)(2); *Timbers of Inwood Forest Assocs.*, 484 U.S. at 375–76. To satisfy § 362(d)(2)(B), a debtor must show a "reasonable possibility of a successful reorganization within a reasonable time." *Id.* (internal quotation marks omitted) (citation omitted).

As set forth above, *supra* § IV.A., the Debtor has no equity because its own Schedules value the Debtor's property at $6,303,132.04, and the Bank's secured claim is $7,504,885.07. In addition to the Bank's secured claim, secured claims have also been filed by the Utah Department of Agriculture in the amount of $734,511.20 (Claim No. 3-1) and the SBA in the amount of $510,232.06 (Claim No. 7-1). Thus, claims securing the Collateral exceed $8.5 million.

The Collateral is also not necessary for an effective reorganization because the Debtor has no realistic prospect of an effective reorganization. The Debtor's counsel conceded that the Debtor's proposed Plan could not be confirmed without the Bank's consent and that feasibility looked somewhat doubtful. The Bank has objected to confirmation on multiple independent grounds and will not consent. (Dkt. No. 46.) A realistic interest rate in this interest environment under *Till*, which requires payment of the prime rate and a risk premium of between 2 and 4 percent would be between 9 and 11 percent, which is patently infeasible given the Debtor's historic income. *Till v. SCS Credit Corp.*, 541 U.S. 465, 479-81 (2004); *In re Woods*, 465 B.R. 196, 207 (10th Cir. B.A.P. 2012) (holding that *Till* applies to chapter 12 cases and applying the lowest possible risk premium of 2 percent where the secured lender was protected by appreciating real property). Thus, the Debtor has no reasonable possibility of confirming its proposed Plan within a reasonable time.

The Debtor also has no reasonable prospect of proposing any confirmable plan within a reasonable time. The Debtor has continued to lose between $70,000 and $116,000 per month between June and August 2026. This is during a time when it has no obligations to make any plan payments. The Debtor therefore has not shown an ability to operate its business and generate sufficient funds to make payments under any proposed plan. Accordingly, relief from the automatic stay is justified under § 362(d)(2).

## V. WAIVER OF STAY UNDER RULE 4001(A)(4)

The Bank requests a waiver of the 14-day stay under Fed. R. Bankr. P. 4001(a)(4). In this case, the Bank's Collateral includes live animals (cattle). Given the continued loss of cash, lack of reporting and insight into the financial affairs of the Debtor, and the Debtor's repeated denial of the Bank's request to inspect, count, and appraise the cattle, the Bank has concerns regarding the condition and health of the herd. The Bank accordingly requests the termination of the stay be effective immediately upon entry of an order granting this Motion.

## VI. STATEMENT OF NOTICE UNDER LOCAL RULE 4001-1(A)(3)

Pursuant to Local Rule 4001-1(a)(3), the Bank conducted the following to identify other people or entities that may have an interest in the Collateral:

i. A review of a search of the Uniform Commercial Code records maintained by the Utah Department of Commerce, Division of Corporations and Commercial Code, for financing statements and related filings naming the Debtor certified through December 18, 2025, attached hereto as **Exhibit N**;

ii. A review of a certified foreclosure report issued by Juab Title & Abstract Company, reflecting the record title, deeds of trust, judgment liens, tax liens, easements, and other encumbrances of record against the real property identified in the report as of April 15, 2025, attached hereto as **Exhibit O**;

iii. A review of the Debtor's Schedule D (Creditors Who Have Claims Secured by Property) and related schedules and statements filed in this case (Dkt. Nos. 16, 20); and

iv. A review of the claims register maintained by the Clerk of this Court.

b. Based on these searches, the following are the only people or entities known to the Bank that may hold an interest in the Collateral:

i. Deere & Company;

ii. the United States Small Business Administration;

iii. the Utah Department of Agriculture and Food;

iv. AGCO Finance LLC;

v. COG Marketers, Ltd. dba AgroLiquid; and

vi. Stearns Bank Equipment Finance.

As set forth in the Proof of Service, the Bank has served this Motion and the accompanying Notice on each such party in accordance with Fed. R. Bankr. P. 4001(a) and Local Rule 4001-1.

## VII. CONCLUSION

For the foregoing reasons, the Bank respectfully requests that the Court enter an order substantially in the form attached hereto as **Exhibit P** granting the Bank relief from the automatic stay under 11 U.S.C. § 362(d)(1) and (d)(2) to permit the Bank to exercise its rights and remedies under applicable non-bankruptcy law with respect to the Bank's Collateral and to proceed with the State Court Action. The Bank further requests the Court waive the 14-day stay period under Fed. R. Bankr. P. 4001(a)(4) and grant such other and further relief as the Court deems just and proper, including conditioning or modifying the stay as appropriate.

DATED this 23rd day of October 2026.

**PARSONS BEHLE & LATIMER**

*/s/ Andrew V. Hardenbrook*
Andrew V. Hardenbrook

*Attorneys for Hillcrest Bank, a division of NBH Bank*

**INDEX TO EXHIBITS***

| Exhibit | Description |
|---|---|
| **A** | $2.286M SBA Loan |
| **B** | Ag. Loan 1 |
| **C** | Ag. Loan 2 |
| **D** | Ag. Loan 3 |
| **E** | Ag. Loan 4 |
| **F** | Deeds of Trust for Ag. Loans |
| **G** | UCC-1 Financing Statements for Loans |
| **H** | Deed of Trust (Loan #5984451907) |
| **I** | Deed of Trust (Loan #5884454008) |
| **J** | Pari Passu Agreement (10-5-2018) |
| **K** | Notice of Default and Demand for Payment |
| **L** | Articles of Merger |
| **M** | Budgeted vs. Actual |
| **N** | UCC Search |
| **O** | Certified Foreclosure Report |
| **P** | Proposed Order |

* Exhibits available upon request. Contact Brian Rothschild, BRothschild@parsonsbehle.com or 801.532.1234

## PROOF OF SERVICE

I hereby certify that on October 23, 2026, I caused a true and correct copy of **HILLCREST BANK'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY** to be filed with the Court's ECF system, and effectuated service on this day as follows:

1. Electronic service via the Court's ECF system on the following:

- **John S. Gygi** john.gygi@sba.gov
- **Andrew Vance Hardenbrook** ahardenbrook@parsonsbehle.com, ecf@parsonsbehle.com,ebourne@parsonsbehle.com,fax@parsonsbehle.com,Docket@parsonsbehle.com
- **Stanford Pinegar** stanpinegar@agutah.gov
- **Mark C. Rose tr** trustee.mrose@rqn.com, UT32@ecfcbis.com
- **Brian M. Rothschild** brothschild@parsonsbehle.com, ecf@parsonsbehle.com;docket@parsonsbehle.com
- **Theodore Floyd Stokes** ted@stokeslawpllc.com
- **United States Trustee** USTPRegion19.SK.ECF@usdoj.gov
- **Aaron M. Waite** aaronmwaite@agutah.gov

*/s/ Andrew V. Hardenbrook*
Andrew V. Hardenbrook